UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ERIK J. HASS  and SIMPLY GAINS, INC.,<br><br>Defendants. | Case No.: 6:20-cv-934<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS** |

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission"), an independent federal agency, alleges as follows:

## I.    SUMMARY

1.      From at least March 2013 through in or about February 2019 (the "Relevant Period"), Erik Jon Hass ("Hass"), individually and as principal and agent of Simply Gains, Inc. ("Simply Gains") (together "Defendants"), operated a fraudulent scheme in which he fraudulently solicited and accepted at least $2.1 million from at least twenty-one individuals ("Pool Participants") for a pooled investment vehicle in off-exchange leveraged or margined foreign currency exchange ("forex") contracts, and misappropriated at least $415,000 of the funds deposited by the Pool Participants.

2.      To entice prospective Pool Participants, Defendants knowingly and falsely represented, among other things, that:  (1)  Defendants had made large profits for themselves and Pool Participants by trading forex; (2) Pool Participants would realize profits of 2% per month; (3) Defendants would donate an additional 0.5% per month to charities of the Pool Participants'

choice; (4) Defendants would be compensated only from profits in excess of 2.5% per month; (5) Defendants utilized stop-loss procedures to ensure that losses were typically limited to no more than 5% of the account balance and that in no event could losses exceed 20% of the account balance; and (6) Pool Participants could withdraw the funds they had deposited without any loss of principle or profits by providing sixty days' notice.

3.      In addition to making misrepresentations of material fact when soliciting funds from existing and prospective Pool Participants, Defendants omitted material facts such as (1) they traded only a portion of the Pool Participants' funds; (2) Hass regularly lost money trading forex; (3) Defendants commingled Pool Participants' funds; and (4) neither Defendant was registered with the CFTC as required by federal law.

4.      Defendants failed to trade Pool Participants' funds as promised and, instead, misappropriated much of their money and lost the rest by trading with no stop loss.  Upon Defendants' direction, Pool Participants deposited their funds into Defendant Simply Gains's bank account.  Thereafter, Defendants commingled these funds with Hass's own funds and used the account to pay Hass and his wife salaries that were never disclosed to Pool Participants, to pay Hass's personal expenses including a Caribbean cruise, and to pay down his mortgage. Other amounts were paid to some Pool Participants, in the manner of a Ponzi scheme.  The remainder was lost in forex trades using 50:1 leverage with no stop loss in place.

5.      By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 4b(a)(2)(A)-(C) and 4$o$(1)(A)-(B) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6$o$(1)(A)-(B) (2018), which prohibit fraud in connection with forex transactions and fraud by a commodity pool operator ("CPO"), and Commission Regulation

("Regulation") 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2019), which prohibits fraud in connection with retail forex transactions (defined as any transaction described in 7 U.S.C. § 2(c)(2)(B) or (C) (2018)).

6.      At all times during the Relevant Period, Defendant Simply Gains acted as a CPO by operating or soliciting funds for a pooled investment vehicle that is not an eligible contract participant ("ECP") and that engages in retail forex transactions, without being registered with the Commission as a CPO, in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1) (2018), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2019).  In addition, Defendant Simply Gains engaged in prohibited CPO activities, in violation of Regulation 4.20(a)(1), (b), and (c), 17 C.F.R. § 4.20 (a)(1), (b), (c) (2019).

7.      Similarly, Defendant Hass solicited funds for participation in a pooled investment vehicle for the purpose of trading in off-exchange leveraged or margined forex contracts, while associated with Defendant Simply Gains as an officer, employee, or agent, without being registered with the Commission as an associated person ("AP") of Simply Gains, in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) (2018), and 17 C.F.R. § 5.3(a)(2)(ii) (2019).

8.      Unless restrained and enjoined by this Court, Defendants will likely continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as described below.

9.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations promulgated thereunder.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not

limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other and further relief as the Court may deem necessary or appropriate.

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), provides that U.S. district courts have jurisdiction to hear actions brought by the Commission for injunctive relief or to enforce compliance with the Act whenever it shall appear to the Commission that a person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

11.    The CFTC has jurisdiction over the forex solicitations and transactions at issue in this action pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2018).

12.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), because Defendants transact or transacted business in this District, and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur in this District.  Specifically, Defendant Hass resides in the district, Defendants conduct business in the district, and several of the defrauded Pool Participants reside in and were solicited in this District.

### III.    THE PARTIES

13.    Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") is an independent federal regulatory agency charged by Congress with the responsibility of administering and enforcing the provisions of the Act and the Commission's Regulations promulgated thereunder.  The Commission maintains its principal office at 1155 21st Street N.W., Washington, DC 20581.

14.    Defendant Erik Jon Hass is a resident of Lane County, Oregon.  Hass is the President and sole owner of Defendant Simply Gains.  Hass has never been registered with the Commission in any capacity.

15.    Defendant Simply Gains, Inc. was incorporated in Oregon on January 30, 2013. During the Relevant Period, the Simply Gains address was the same as Hass's residence.  Simply Gains has never been registered with the Commission in any capacity.

### IV.    STATUTORY AND REGULATORY BACKGROUND

16.    Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2018), applies provisions of the Act to agreements, contracts, or transactions in forex.  Specifically, 7 U.S.C. § 2(c)(2)(C)(iv) states that Section 4b of the Act, 7 U.S.C. § 6b (2018), applies to forex agreements, contracts, or transactions "as if" they were contracts of sale of a commodity for future delivery.

17.    Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2018), prohibits any person from operating or soliciting funds, securities, or property for any pooled investment vehicle that is not an ECP in connection with agreements, contracts, or transactions in forex, unless registered with the Commission, with certain exceptions not applicable to Defendants.

18.     Section 1a(18)(iv) and (xi) of the Act, 7 U.S.C. § 1a(18)(A)(iv), (xi) (2018),

defines an ECP, in relevant parts, as:

> [A] commodity pool that–(I) has total assets exceeding $5,000,000; and (II) is formed
> and operated by a person subject to regulation under [the Act] . . . , provided, however,
> that for purposes of Section 2(c)(2)(C)(vii) of [the Act], the term [ECP] shall not include
> a commodity pool in which any participant is not otherwise an eligible contract
> participant, *see* 7 U.S.C. § 1a(18)(iv) (2012); or

> [A]n individual who has amounts invested on a discretionary basis, the aggregate of
> which is in excess of–(I) $10,000,000; or (II) $5,000,000 and who enters into the
> agreement, contract, or transaction in order to manage the risk associated with an asset
> owned or liability incurred, or reasonably likely to be owned or incurred, by the
> individual.

19.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2018), and Regulation 5.3(a)(2)(i),

17 C.F.R. § 5.3(a)(2)(i) (2019), require any person acting as a CPO, as defined in Regulation

5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2019), to be registered as such with the Commission.

20.     For the purposes of trading forex, a CPO is defined in 17 C.F.R. § 5.1(d)(1) as

"any person who operates or solicits funds, securities, or property for a pooled investment

vehicle that is not an [ECP] as defined in section 1a(18) of the Act, and that engages in retail

forex transactions[.]"

21.     Section 4k of the Act, 7 U.S.C. § 6k(2) (2018), and Regulation 5.3(a)(2)(ii),

17 C.F.R. § 5.3(a)(2)(ii) (2019), require any AP of a CPO, as defined in Regulation 5.1(d)(2),

17 C.F.R. § 5.1(d)(2) (2019), to be registered as such with the Commission.

22.     For the purposes of trading forex, an AP of a CPO is defined in 17 C.F.R.

§ 5.1(d)(2) as "any natural person associated with a commodity pool operator . . . as a partner,

officer, employee, consultant or agent . . . in any capacity which involves:  (i) The solicitation of

funds, securities, or property for a participation in a pooled investment vehicle; or (ii) The

supervision of any person or persons so engaged."

## V.    FACTS

### A.    Defendants' Fraudulent Solicitation and False Statements

23.    During the Relevant Period, Defendants fraudulently solicited more than $2.1 million from at least twenty-one non-ECP Pool Participants, who were Defendant Hass's friends, co-workers, fellow members of his church, and members of the public, for the purpose of trading off-exchange leveraged or margined forex contracts in a pooled investment vehicle on behalf of the Pool Participants.

24.    Defendants solicited prospective Pool Participants through in-person meetings, telephone calls, e-mails, text messages, and word of mouth, seeking out individuals who would agree to let Hass trade forex on their behalf through his company, Simply Gains.

25.    In soliciting prospective Pool Participants, throughout the Relevant Period, Hass, as a principal and agent of Simply Gains, made the following misrepresentations, among others:

a.    Hass had become highly skilled in forex trading over the prior five years and had gained more than 2% each and every month for at least three years;

b.    Hass would utilize his proven strategy to provide consistent returns of 2% per month to the Pool Participants' accounts;

c.    Defendants would donate an additional 0.5% in returns per month to a charity of Pool Participants' choice;

d.    Defendants would only take profits if Pool Participant deposits returned more than 2.5% per month;

e.    Pool Participants could avoid any loss of principal and interest by giving Defendants sixty days' notice prior to withdrawing funds;

f.    Defendants would implement a stop-loss mechanism to ensure account risk does not exceed specified percentages, including a mechanism ensuring that losses could never exceed 20% of the account balance;

g.    Forex trading is a suitable investment for the Pool Participants' ages, investment objectives, experience, and financial circumstances;

h.    Defendants would issue 1099-INT tax forms to Pool Participants.

26.    At the direction of the Defendants, Pool Participants entered into written "unsecured promissory notes" with Simply Gains.  Hass provided the promissory note to Pool Participants by e-mail or through other means or instrumentalities of interstate commerce. Although the participation interests were structured as loans, Pool Participants understood that their funds were being traded by Defendants and that trading profits would be the source of funds they received from Defendants.

27.    The unsecured promissory notes contained multiple false statements, including:

    a.  Interest would accrue to the Pool Participants at an expected fixed rate of 2% monthly;

    b.  Defendants would issue a monthly statement of interest and account balance;

    c.  Defendants would issue an annual 1099-INT form; and

    d.  With sixty days' notice, Pool Participants could close their accounts and withdraw their account balances, including all principal and interest.

28.    In fact, Hass intentionally misappropriated a portion of the Pool Participants' funds for his own benefit and personal use.  Defendants Simply Gains and Hass deposited the remainder of the Pool Participants' funds in highly leveraged forex positions with no stop-loss procedures in place.  The various forex trades made by Defendants suffered dramatic losses almost immediately upon being made.  However, rather than accurately reporting those losses, Defendants represented to Pool Participants that their accounts were highly profitable and induced them to deposit further funds.

29.    To conceal from Pool Participants that their funds had been misappropriated and/or lost, Hass told some Pool Participants, both orally and in written purported account statements, that their deposits were making money month after month.  Hass reported to Pool Participants that their accounts had obtained tens or hundreds of thousands of dollars in profits and that their account balances had increased by 60-70%.  These statements were false.

30.     For example, one Pool Participant, who deposited $773,400 with Defendants via an Individual Retirement Account ("IRA"), received from Hass, periodically from in or about March 2014 until in or about July 2018, monthly statements falsely indicating that his account had interest gains totaling $476,561.  Another Pool Participant who deposited $68,800 with Defendants received statements falsely indicating his deposit had earned $38,544 in interest from June 2013 through December 2017.  Hass now admits that these account statements falsely showed that the Pool Participants' accounts were increasing in value.

31.     Instead of using the entirety of the Pool Participants' funds to trade forex, as Hass had represented that Defendants would do, Defendants used portions of the Pool Participants' funds to pay down Hass's mortgage, to pay down Hass's credit card debt, and to pay for a Caribbean cruise and other of Hass's personal expenses.  Defendants also misappropriated at least $10,000 each quarter from the Pool Participants' accounts to pay a "salary" to himself and his wife, regardless of whether the accounts had gained or lost money that quarter.

32.     In February 2019, Hass emailed certain Pool Participants to tell them that Defendants had lost all of their money.  This was the first time Defendants had disclosed any losses in the accounts to any of the Pool Participants.

33.     Defendants made the misrepresentations and omissions alleged herein willfully or with reckless disregard for the truth and by use of the mails or other means or instrumentalities of interstate commerce.

**B.     Defendants Misappropriated Pool Participants' Funds**

34.     Defendants instructed Pool Participants to wire their funds to the Simply Gains's Credit Union Account, or to give Hass a check made out to Simply Gains.  For funds held in retirement accounts, Defendants instructed Pool Participants to roll their accounts over to a self-

directed IRA service (the "IRA service") and execute a form ordering the IRA service to "lend" the funds to Simply Gains in return for a note paying 2% monthly.

35.    Most, if not all, funds deposited with Defendants by Pool Participants during the Relevant Period were deposited into the Credit Union Account (either by wire transfers sent directly from Pool Participants, by Defendants depositing checks or cash received from Pool Participants, or by Defendants receiving retirement account funds from the IRA service).

36.    Hass was the sole signatory on the Credit Union Account during the Relevant Period.

37.    Account statements for the Credit Union Account during the Relevant Period show that Defendants misappropriated more than $415,000 from the Credit Union Account, largely by initiating transfers to Hass's personal bank account and using the funds for Hass's personal benefit.

38.    A specific example of Defendants' false statements and misappropriation occurred with Pool Participant 1, who contributed approximately half of the total funds solicited and received by Defendants.  Hass solicited a deposit from Pool Participant 1, who he knew personally because they attended the same church and had previously worked at the same employer.  Hass made various misrepresentations to Pool Participant 1 including, among other things, telling Pool Participant 1 that Hass had become highly skilled in forex trading, Hass's historical average return on investment was 2-3.5% per month, that funds deposited would return profits of 2% per month to Pool Participant 1 plus 0.5% per month to a charity of Pool Participant 1's choice, that Hass would not get paid unless Pool Participant 1 made profits, and that a stop-loss mechanism was in place to avoid large losses.

39.     When Pool Participant 1 replied stating that the bulk of his available funds were in his employer's 401(k) account, Hass suggested that Pool Participant 1 could financially benefit by retiring early and rolling his 401(k) account into an IRA and depositing it with the Defendants.  Hass also provided Pool Participant 1 with a Simply Gains promissory note that contained multiple false statements, including that he could close his accounts and withdraw his account balances, including all principal and interest, without loss of funds with sixty days' notice.  On or about October 7, 2013, Pool Participant 1 deposited funds with the Defendants by wiring $75,330 from a family trust to the Credit Union Account.

40.     In November 2013, Hass sent Pool Participant 1 a statement falsely purporting to show that his account had increased in value by 1% during the last half of October 2013.  In reality, Defendants had lost more than 50% of the funds deposited in 2013, but Hass did not disclose those losses to Pool Participant 1.  The false account statement induced Pool Participant 1 to make further deposits and to quit his job to be able to roll his 401(k) account into an IRA to deposit with the Defendants.  In reliance on the false account statement, between November 2013 and March 2014 Pool Participant 1 deposited an additional $1,129,575 (consisting of $123,213 on behalf of his family trust, $773,400 from his (now former) employer's 401(k), $173,012 from his savings account, and $59,950 from his wife's retirement account) with Simply Gains.

41.     Thereafter, Hass sent Pool Participant 1 false account statements purporting to show that Pool Participant 1's accounts were profitable.  According to the final account statements showing account balances through April 2018, Pool Participant 1's accounts showed a total balance of $1,792,881.

42.    On or about March 8, 2018, Pool Participant 1 asked to withdraw $75,000 from his retirement account.  For more than nearly a year Hass offered a series of excuses for why funds could not be returned to Pool Participant 1.  During this time Hass encouraged Pool Participant 1 to deposit the proceeds from the sale of his mother's house with Defendants and asked Pool Participant 1 to identify ten individuals who may be interested in making deposits with Defendants.  Hass ultimately admitted to Pool Participant 1 that he had lost all of Pool Participant 1's funds.

43.    Another specific example of Defendants' false statements and misappropriation caused Pool Participant 2 to lose the entirety of the funds she had deposited.  In early 2018, after Defendants had spent or lost virtually all of the funds that had been entrusted to them, Hass posted an advertisement online seeking an employee to help him generate leads for Simply Gains.  Pool Participant 2 responded to Hass's advertisement and discussed the job opportunity with Hass.  Using the same false statements about how Defendants traded, Hass encouraged Pool Participant 2 to contribute in Simply Gains herself to learn how the business worked before inducing others to deposit funds.  Pool Participant 2 agreed and deposited $50,000 of her retirement assets with Simply Gains on or around April 27, 2018.  Rather than making forex trades with the funds, as Hass had promised, Defendants used Pool Participant 2's funds to pay back other Pool Participants in the manner of a Ponzi scheme.

44.    Forex account statements show that Defendants lost most or all of the Pool Participants' funds that were actually traded.  Defendants utilized accounts at several forex trading brokers to execute trades.  At one such forex broker ("Broker 1") Defendants opened two accounts and deposited $730,000 in Pool Participant funds between March 2014 and January 2015.  In these Broker 1 accounts, Defendants traded the EUR/USD currency pair using leverage

of 50:1 with no stop-loss mechanism.  By January 2018, Defendants' disastrous trading had caused losses of more than $647,000 in the Broker 1 accounts.  Of the remaining $83,000, Hass misappropriated a portion and the remainder was paid out to certain Pool Participants who had demanded Defendants return their funds.

45.    In total, of the at least $2,152,575 deposited by Pool Participants, Hass misappropriated at least $415,000 and Defendants lost at least $1,084,000 by trading with no stop-loss mechanism in place.

46.    Defendants did not inform any Pool Participant that his or her account had suffered losses, and Hass continued to solicit additional deposits and tout his trading track record even after his trading accounts had been wiped out.

47.    To date, despite repeated requests to Hass for the return of their funds, most Pool Participants have not received their funds back from the Defendants.

48.    To the extent some Pool Participants have received funds back from Defendants, those funds were misappropriated by Defendants from other Pool Participants, in the nature of a Ponzi scheme.

49.    Defendants misappropriated Pool Participants' funds by use of the mails or other means or instrumentalities of interstate commerce.

**C.    Simply Gains Acted as an Unregistered CPO, and Hass Acted as an Unregistered AP of a CPO**

50.    During the Relevant Period, Defendant Simply Gains, through Defendant Hass, acted by operating or soliciting funds for a pooled investment vehicle that is not an ECP and that engages in retail forex transactions.

51.    During the Relevant Period, Hass acted in a capacity requiring registration as an AP of a CPO by soliciting customers and prospective customers for participation in a pooled

investment vehicle, while associated with Simply Gains as a partner, officer, employee, or similar agent.

52.     During the Relevant Period, Simply Gains was not registered with the Commission as a CPO, and Hass was not registered with the Commission as an AP of a CPO as required by the Act and Regulations.

**D.    Hass Was a Controlling Person of Simply Gains**

53.     Defendant Hass was a controlling person of Simply Gains.  Hass was the founder, President, and sole owner of Simply Gains.  Hass told Pool Participants that he was responsible for the trading at Simply Gains and was generally the sole source of information for Pool Participants regarding Simply Gains and their accounts.  Hass controlled the Simply Gains Credit Union Account, into which Pool Participants transferred funds for the purpose of trading forex.

**E.    Hass Acted as an Agent for Simply Gains**

54.     Throughout the Relevant Period, Hass was an agent of Simply Gains and acted within the course and scope of his agency with Simply Gains, including, but not limited to his solicitation of prospective and existing Pool Participants and his continued communication with Pool Participants regarding their purported trading success on behalf of Simply Gains.

## VI.    STATUTORY AND REGULATORY VIOLATIONS

### COUNT ONE—AGAINST ALL DEFENDANTS

**FRAUD IN CONNECTION WITH FOREX CONTRACTS**
**Violations of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3)**

55.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

56.     Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2018), makes it unlawful "for any person, in or in connection with any order to make, or the making of, any

contract for sale of any commodity for future delivery . . . that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market–(A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to an order or contract for or, in the case of paragraph (2), with the other person."

57.     Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2018), provides that 7 U.S.C. § 6b(a)(2)(A)-(C) also applies to the forex transactions, agreements, or contracts offered by Defendants "as if" they were a contract of sale of a commodity for future delivery.

58.     Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2019), makes it unlawful "for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) to cheat or defraud or attempt to cheat or defraud any person; (2) [w]illfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) [w]illfully to deceive or attempt to deceive any person by any means whatsoever."

59.     During the Relevant Period, Defendants violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3), by, among other things:

    a.  Falsely claiming to Pool Participants that Hass was a highly successful forex trader with a consistent track record of profitable trading;

    b.  Falsely promising Pool Participants that their funds would be used to trade forex;

    c.  Falsely promising Pool Participants that their funds would generate profits of 2% per month without possibility of losses of more than 20%;

    d.   Falsely promising Pool Participants that additional returns would result in contributions to charities of their choosing;

    e.   Falsely promising Pool Participants that they could withdraw their funds with sixty days' notice;

    f.   Issuing false written account statements to Pool Participants; and

    g.   Misappropriating Pool Participants' funds for Hass's personal benefit and to pay other Pool Participants in the nature of a Ponzi scheme.

60.    Defendants committed the acts and practices described above using instrumentalities of interstate commerce, including the use of interstate wires for transfer of funds.

61.    Defendants committed the acts and practices described herein willfully, or with reckless disregard for the truth.

62.    The foregoing acts, omissions and failures as alleged in this Count of Hass, and of all other agents of Simply Gains, occurred and are occurring within the scope of their employment, office, or agency with Simply Gains; therefore, Simply Gains is liable for these acts, omissions, and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2019).

63.    Hass directly or indirectly controls Simply Gains, and did not act in good faith or knowingly induced, directly or indirectly, Simply Gains's violations alleged in this Count, and is thus liable for Simply Gains's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018).

64.    Each act of misrepresentation, omission of material fact, and misappropriation, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

## COUNT TWO—AGAINST ALL DEFENDANTS

### FRAUD BY A CPO AND AN ASSOCIATED PERSON OF A CPO
### Violations of 7 U.S.C. § 6*o*(1)(A)-(B)

65.     The allegations set forth in the preceding paragraphs are re-alleged and

incorporated herein by reference.

66.     Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2018), makes it unlawful for CPOs

and APs of CPOs:

> by use of the mails or any other means or instrumentality of
> interstate commerce, directly or indirectly – (A) to employ any
> device, scheme, or artifice to defraud any client or participant or
> prospective client or participant; or (B) to engage in any
> transaction, practice, or course of business which operates as a
> fraud or deceit upon any client or participant or prospective client
> or participant.

67.     As alleged herein, during the Relevant Period, Simply Gains, through Hass, acted

as a CPO by operating, or soliciting funds for, a pooled investment vehicle that is not an ECP

and that engages in retail forex transactions.

68.     Hass acted as an AP of a CPO because he was associated with a CPO as a partner,

officer, employee, consultant, or agent in a capacity that involved the solicitation of funds,

securities, or property for participation in a pooled investment vehicle.

69.     Simply Gains, through Hass, and Hass in his individual capacity, violated

7 U.S.C. § 6*o*(1)(A)-(B), in that by use of the mails or any other means or instrumentality of

interstate commerce, they employed or are employing a device, scheme, or artifice to defraud

actual or prospective Pool Participants, or engaged or are engaging in transactions, practices, or a

course of business which operated or operates as a fraud or deceit upon actual or prospective

Pool Participants.

70.    Hass directly or indirectly controls Simply Gains, and did not act in good faith or knowingly induced, directly or indirectly, Simply Gains's violations alleged in this Count, and is thus liable for Simply Gains's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018).

71.    The foregoing acts, omissions and failures of Hass as alleged in this Count, and of all other agents of Simply Gains, occurred and are occurring within the scope of their employment, office or agency with Simply Gains; therefore, Simply Gains is liable for these acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2019).

72.    Each misrepresentation, omission of material fact, and misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6o(1)(A)-(B).

## COUNT THREE—AGAINST DEFENDANT SIMPLY GAINS

### FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR
### Violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1), and 17 C.F.R. § 5.3(a)(2)(i)

73.    The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

74.    As alleged herein, during the Relevant Period, Defendant Simply Gains, which was not exempt from registration as a CPO, acted as a CPO and made use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO by operating or soliciting funds for a pooled investment vehicle that is not an ECP and that engages in retail forex transactions.  Simply Gains engaged in this conduct without being registered with the Commission as a CPO in violation of Sections 2(c)(2)(C)(iii)(I) and 4m(1) of the Act,

7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1) (2018), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2019).

75.     Hass directly or indirectly controls Simply Gains, and did not act in good faith or knowingly induced, directly or indirectly, Simply Gains's violations alleged in this Count, and is thus liable for Simply Gains's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018).

## COUNT FOUR—AGAINST DEFENDANT HASS

### FAILURE TO REGISTER AS AN
### ASSOCIATED PERSON OF A COMMODITY POOL OPERATOR
### Violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6k(2) and 17 C.F.R. § 5.3(a)(2)(ii)

76.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

77.     During the Relevant Period, Defendant Hass acted as an associated person of a CPO by operating or soliciting funds, securities, or property for the Simply Gains pooled investment vehicle, which was not ECP, in connection with off-exchange leveraged or margined forex transactions.  Hass engaged in this conduct without being registered with the Commission as an AP of CPO Simply Gains, in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) (2018), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2019).

78.     The foregoing acts, omissions and failures of Hass as alleged in this Count, occurred and are occurring within the scope of his employment, office or agency with Simply Gains; therefore, Simply Gains is liable for these acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2019).

## COUNT FIVE—AGAINST DEFENDANT SIMPLY GAINS

### PROHIBITED ACTIVITIES BY A COMMODITY POOL OPERATOR
### Violations of 17 C.F.R. § 4.20(a)(1), (b), and (c)

79.     The allegations set forth in the preceding paragraphs are re-alleged and

incorporated herein by reference.

80.     During the Relevant Period, Simply Gains, acting through Hass and while acting

as a CPO, violated Regulation 4.20(a)(1), (b), and (c), 17 C.F.R. § 4.20(a)(1), (b), (c) (2019), by:

(i) failing to operate the commodity pool as a legal entity separate from Simply Gains, the CPO;

(ii) receiving Pool Participant funds in the name of Simply Gains, rather than in the name of the

commodity pool; and (iii) commingling the property of the commodity pool with the funds of

Simply Gains and Hass.

81.     Hass controlled Simply Gains, directly or indirectly, and did not act in good faith

and knowingly induced, directly or indirectly, Simply Gains to commit the acts and/or omissions

alleged herein.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), Hass

is liable for Simply Gains's violations of the Act and Regulations, as alleged in this count.

## VII.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by

Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to its own equitable powers:

A.     Find that Defendants Simply Gains and Hass violated Sections

2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A)-(C), and 4*o*(1)(A)-(B) of the Act, 7 U.S.C.

§§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), 6*o*(1)(A)-(B) (2018), and Regulation 5.2(b)(1)-(3),

17 C.F.R. § 5.2(b) (1)-(3) (2019);

B.     Find that Defendant Simply Gains violated Section 4m(1) of the Act, 7 U.S.C.

§ 6m(1) (2018), and Regulations 4.20(a)(1), (b), and (c) and 5.3(a)(2)(i), 17 C.F.R. §§ 4.20(a)(1),

(b), (c), 5.3(a)(2)(i) (2019), and Defendant Hass, as a controlling person pursuant to Section

13(b) of the Act, 7 U.S.C. § 13c(b) (2018), is liable for Simply Gains's violations of the Act and

Regulations;

      C.      Find that Defendant Hass violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2)

(2018), and 17 C.F.R. § 5.3(a)(2)(ii) (2019), and Defendant Simply Gains, as principal pursuant

to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. §

1.2 (2019), is liable for Defendant Hass's violations of the Act and Regulations.

      D.      Enter an order of permanent injunction restraining, enjoining, and prohibiting

Defendants Simply Gains and Hass, and their affiliates, agents, servants, employees, successors,

assigns, attorneys, and all persons or entities in active concert with them, who receive actual

notice of such order by personal service or otherwise, from engaging in the conduct described

above, in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A) and (C), 6o(1)(A)-(B), 6k(1)

and 6m(1), and 17 C.F.R. §§ 5.2(b) (1) and (3), and 5.3(a)(2)(i)-(ii).

      E.      Enter an order of permanent injunction restraining, enjoining, and prohibiting

Defendants Simply Gains and Hass, and their affiliates, agents, servants, employees, successors,

assigns, attorneys, and all persons or entities in active concert with them, who receive actual

notice of such order by personal service or otherwise, from, directly or indirectly:

      1.   Trading on or subject to the rules of any registered entity (as that term is

           defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

      2.   Entering into any transactions involving "commodity interests" (as that term is

           defined in Regulation 1.3, 17 C.F.R. 1.3 (2019)), for accounts held in the

           name of any Defendant or for accounts in which any Defendant has a direct or

           indirect interest;

3.  Having any commodity interests traded on any Defendant's behalf;

4.  Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5.  Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6.  Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and

7.  Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

F.    Enter an order requiring Defendants Simply Gains and Hass, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest.

G.    Enter an order requiring Defendants Simply Gains and Hass, as well as any successors thereof, to make full restitution to every person or entity who sustained losses

22

proximately caused by Defendants' violations, including pre-judgment and post-judgment interest.

H.    Enter an order directing Defendants and any of their successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with or among Defendants and any of the clients whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations as described herein.

I.    Enter an order requiring Defendants Simply Gains and Hass to each pay a civil monetary penalty under the Act, to be assessed by the Court, in an amount not to exceed the penalty described by Section 6c(d)(1) of the Act, 7 U.S.C. §13a-1(d)(1) (2018), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, Tit. VII, §701, 129 Stat. 584, 599-600, *see* Regulation 143.8, 17 C.F.R. §143.8 (2019), for each violation of the Act and Regulations, as described herein.

J.    Enter an order requiring Defendants Simply Gains and Hass to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012).

K.    Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated:  June 9, 2020                    Respectfully submitted,


                                        COMMODITY FUTURES TRADING
                                        COMMISSION

                                        /s/ Douglas G. Snodgrass

                                        Joseph Konizeski
                                        Douglas G. Snodgrass
                                        U.S. Commodity Futures Trading Commission
                                        Division of Enforcement
                                        525 West Monroe Street, Suite 1100
                                        Chicago, Illinois 60661
                                        (312) 596-0546 (Konizeski)
                                        (312) 596-0663 (Snodgrass)
                                        jkonizeski@cftc.gov
                                        dsnodgrass@cftc.gov